In the District Court of the United States
For the District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| Frederick L. Cabbagestalk, #175388, ) | |
| ) | Civil Action No. 9:06-3005-MBS-GCK |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Jon E. Ozmint, Director of SCDC; ) | |
| Eddie O'Caine, Director of Security ) | |
| Threat Group; NFN Bordison, ) | |
| Associate Warden of Lieber Correctional ) | |
| Institution; Colie Rushton, Warden of ) | |
| McCormick Correctional Institution; ) | |
| NFN Gilmore, Classification Supervisor ) | |
| at Lieber Correctional Institution; ) | |
| NFN Boyd, Classification Case ) | |
| Manager of SMU at Lieber Correctional ) | |
| Institution; NFN Parker, Classification ) | |
| Case Manager at McCormick Correctional ) | |
| Institution; NFN Nettles, Major of Security ) | |
| at Lieber Correctional Institution; ) | |
| NFN Bumcomb, Lieutenant at Lieber ) | |
| Correctional Institution; NFN Sheppard, ) | |
| Lieutenant at Lieber Correctional Institution;) | |
| and NFN Pearson, Sergeant and Security ) | |
| Group (STG) Coordinator; are all being ) | |
| sued in their official and individual ) | |
| capacities as correctional officials, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## I. INTRODUCTION

The Plaintiff, Frederick L. Cabbagestalk ("Plaintiff"), is a state prisoner who is currently incarcerated in the South Carolina Department of Correction (the "SCDC's") McCormick Correctional Institution ("McCormick"). He has filed this action against the above-named

defendants, Jon E. Ozmint ("Ozmint,"), Eddie O'Caine ("O'Caine"),[1] NFN Bordison ("Bordison"), Colie Rushton ("Rushton"), NFN Gilmore ("Gilmore"), NFN Boyd ("Boyd"), NFN Parker ("Parker"), NFN Nettles ("Nettles"), NFN Bumcomb ("Bumcomb"), NFN Sheppard ("Sheppard), and NFN Pearson ("Pearson") (collectively, the "Defendants"), seeking relief pursuant to Title 42, United States Code Section 1983 for alleged violations of his constitutional rights.  Plaintiff sues the Defendants in the official and individual capacities as correctional officials.

The Plaintiff alleges that he was improperly transferred from the general prison population into a Special Management Unit ("SMU") as a member of a Security Threat Group known as the Five Percenters.  He claims that he renounced his membership in the Five Percenters back in the mid-1990s during a previous incarceration.  In his complaint, the Plaintiff alleges that he has been denied due process in his placement in SMU.  The Plaintiff seeks both monetary and injunctive relief.  Specifically, he seeks an order releasing him from SMU and returning him to the general prison population.

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  A motion for summary judgment has been filed by the Defendants.  As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

## II.  *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976);

---

[1] The correct spelling of this name is O'Cain.  *See* O'Cain Affidaivt, attached to Defendants' Memorandum in support of motion for summary judgment.

*Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990). Such is the case with the present complaint.

### III. FACTUAL BACKGROUND

The facts, either uncontested or taken in the light most favorable to the Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record, are set forth below:

On January 16, 1996, during a prior incarceration, the Plaintiff was designated as a member of a Security Threat Group ("STG") called the Nation of Gods and Earths, commonly referred to as the "Five Percenters."[2] Although the Plaintiff attempted to renounce his affiliation with the Five Percenters at a hearing before the STG Committee in December 1995, his renunciation was rejected and he was designated as an STG member and was reclassified to Security Detention ("SD") custody.[3] The Plaintiff remained in Security Detention custody as a result of being a confirmed STG member until his release from SCDC in 2001.[4]

On March 20, 2006, the Plaintiff was re-admitted to SCDC on a new conviction. He was initially classified as ME custody and assigned to the general prison population at Lieber Correctional Institution (Lieber"). In June 2006, Martha Gilmore, who is the Classification Case Manager at Lieber, received a directive from the Classification and Inmate Records Division at Headquarters advising that any inmates in general population that were confirmed STG-SD inmates needed to be placed into lock-up.[5] As Gilmore explained in her affidavit, "[i]t is SCDC policy that an inmate who is designated as an STG member when he leaves SCDC must be designated an STG member when he returns. An inmate is designated an STG member until the

---

[2] The historical background and reasons for designating the Five Percenters as an STG are discussed in the Fourth Circuit's decision in *In re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464 (4th Cir. 1999).

[3] *See* O'Cain Affidavit, paras. 4-6, attached at Tab #3 to Defendants' Memorandum in Support of Motion for Summary Judgment [11-2].

[4] *See* O'Cain Affidavit, para. 7, attached at Tab #3 to Defendants' Memorandum [11-2].

[5] *See* Gilmore Affidavit, para. 2, attached at Tab #4 to Defendants' Memorandum [11-2].

Page 4 of 12

Special Investigations Unit approves his renunciation."[6] This policy was confirmed by the Defendant O'Cain, who is the Branch Chief of the Special Investigations Unit and who is responsible for investigating the Security Threat Groups and their members.[7] In accordance with that directive, the Plaintiff was reassigned to SMU on Security Detention on August 1, 2006.

On the following day, August 2, 2006, the SMU Institutional Classification Committee at Lieber conducted a custody status review hearing, which the Plaintiff attended and was permitted to state his position.[8] The Committee voted unanimously to recommend that the Plaintiff's custody be changed to SD-II because he had been a confirmed Five Percenter during his previous incarceration.[9] The Committee's recommendation was approved by Associate Warden Fred Thompson on August 3, 2006, and as a result, the Plaintiff was reclassified to STG-SD status and remained confined in the SMU at Lieber until August 9, 2006, when he was transferred to McCormick.[10]

After the Plaintiff was transferred to McCormick, he again was placed in SMU. On August 11, 2006, Plaintiff received his initial custody review hearing at that institution.[11] Thereafter, the Plaintiff receive four additional thirty-day custody review hearings which took place on August 30, 2006; September 26, 2006; October 24, 2006; and November 21, 2006.[12]

---

[6]   *See* Gilmore Affidavit, para. 3, attached at Tab #4 to Defendants' Memorandum [11-2].

[7]   *See* O'Cain Affidavit, para. 8, attached at Tab #3 to Defendants' Memorandum [11-2].

[8]   *See* Boyd Affidavit, paras. 2-3, attached at Tab #5 to Defendants' Memorandum [11-2].

[9]   *See* Boyd Affidavit, para. 4, attached at Tab #5 to Defendants' Memorandum [11-2].

[10]  *See* Boyd Affidavit, para. 5, attached at Tab #5 to Defendants' Memorandum [11-2].

[11]  *See* Miller Affidavit, para. 3, attached at Tab #6 to Defendants' Memorandum [11-2].

[12]  *See* Miller Affidavit, paras. 4-7, attached at Tab #6 to Defendants' Memorandum [11-2].

On each occasion, the Committee maintained the Plaintiff at SD custody because of his designation as an STG member.

On October 27, 2006, Defendant Sgt. Elbert Pearson of the Special Investigations Unit interviewed the Plaintiff at McCormick. At that time, the Plaintiff completed a Security Threat Group Renunciation Questionnaire and signed a Security Threat Group Renunciation form.[13] On November 6, 2006, Defendant O'Cain approved and accepted the Plaintiff's renunciation as a Five Percenter.[14] Thereafter, on November 29, 2006, a custody status change hearing was held by the SMU Institutional Classification Committee at McCormick. The Plaintiff ultimately was approved for a custody change from SD to ME, and he was released from SMU and into the general population on December 4, 2006.[15]

## IV.  PROCEDURAL HISTORY

On October 19, 2006, the Plaintiff commenced this action against the Defendants.[16]  [1] On December 18, 2006, an answer was filed on behalf of all of the Defendants which alleged, among other matters, that Plaintiff had failed to exhaust his available administrative remedies prior to filing this action.  [7]

On February 15, 2007, the Defendants filed a Motion for Summary Judgment, a Memorandum, and affidavits and exhibits.  [11]  By order of this Court filed February 21, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately.

---

[13]     *See* O'Cain Affidavit, para. 9, attached at Tab #3 to Defendants' Memorandum [11-2].

[14]     *See* O'Cain Affidavit, para. 10, attached at Tab #3 to Defendants' Memorandum [11-2].

[15]     *See* Miller Affidavit, paras. 8-9, attached at Tab #6 to Defendants' Memorandum [11-2].

[16]     Should a limitations issue arise, the Plaintiff will have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988), with respect to the "delivery" date of his complaint.  [3]  This court has examined the envelope used to mail the complaint and notes that it was marked as received in the McCormick mailroom on October 19, 2006.

[16]  On February 20, 2007, the Plaintiff filed a Motion to Compel production of (1) copies of all his institutional, disciplinary records and specific SCDC policies  and (2) copies of policies and procedures and seeking complete answers to interrogatories.  [13]

On February 27, 2007, the clerk of court issued a Notice of hearing on Plaintiff's motion to compel.  [19]  On March 12, 2007, the Defendants filed a Response in opposition to the Plaintiff's Motion to Compel, along with certain discovery answers and responses.  [20]  On March 19, 2007, the undersigned held a hearing on the motion to compel, and took the matter under advisement.  [23]  Thereafter, on April 3, 2007, the undersigned issued an order denying Plaintiff's motion to compel.  [30]  On April 17, 2007, the Plaintiff filed his reply to Defendants' Motion for Summary Judgment and also filed a motion for partial Cross Summary Judgment. [31; 32]

## V.  SUMMARY JUDGMENT STANDARD

Recommendations regarding the pending motions for summary judgment are governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that:  (1) there is no genuine issue as to any material fact; and (2) that he is entitled

to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## VI.  DISCUSSION

### A.  Whether Plaintiff Exhausted his Administrative Remedies Prior to Filing this Action

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997e(a), requires that a prisoner exhaust "such administrative remedies as are available" before filing a Section 1983 action concerning prison conditions.  The revised PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.").

A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983.  *Woodford v. Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).  A prisoner does not comply with the mandatory requirements of 42 U.S.C. § 1997e(a) by exhausting his remedies during the course of litigation; <u>exhaustion must occur prior to the filing of the lawsuit or it must be dismissed</u>.  *Anderson,* 407 F.3d at 683 (4th Cir.2005) (emphasis supplied by the undersigned); *see also Fair v. Hallman*, 2006 WL 1172198 (D.S.C. 2006), ("As a threshold matter, the court must address whether Plaintiff has exhausted the available administrative remedies *prior to filing*

*suit.*") (Emphasis added); *Husband v. Lovett*, 2006 WL 1207847 (D.S.C. 2006) ("exhaustion of administrative remedies *prior to filing suit* is required by 42 U.S.C. § 1997c(a).")  (Emphasis added).

A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which the defendants have the burden to plead and prove. *Anderson*, 407 F.3d at 681; *Jones v. Bock*, 127 S.Ct. 910, 921 (2007).  In the present case, the Defendants raised Plaintiff's failure to exhaust administrative remedies as an affirmative defense in their Answer, and also have argued in their Memorandum in support of summary judgment that Plaintiff failed to exhaust the administrative remedies provided by the institution.

Upon a review of the record, this court agrees that the Plaintiff failed to exhaust his administrative remedies prior to commencing this action.  The record reflects that the Plaintiff has filed several grievances regarding his change in custody and placement in SMU on August 1, 2006.  The earliest grievance raising these issues was Grievance Number LCI-1060-06, dated August 2, 2006, which was received by the Inmate Grievance Coordinator on August 9, 2006.  This Step 1 grievance was answered on November 16, 2006, but the Plaintiff did not file a Step 2 form.[17]  The Plaintiff subsequently filed three additional grievances regarding these issues after his transfer to McCormick on August 9, 2006.  None of those grievances proceeded through to the Step 2 stage prior to October 19, 2006, which was the filing date of this lawsuit.[18]  Of these three grievances, the Plaintiff has appealed only one of these grievances to the Administrative Law Court.  Specifically, Plaintiff filed an appeal in the Administrative Law Court of Grievance

---

[17]  *See* Coleman Affidavit, para. 4, and Step 1 Grievance Form dated August 2, attached as Exhibit C to Coleman Affidavit.  Both the Coleman Affidavit and Exhibit C are attached at Tab #7 to Defendants' Memorandum [11-2].

[18]  *See* Coleman Affidavit, paras. 5-7, and Exhibits D, E, and F attached thereto, at Tab #7 to Defendants' Memorandum [11-2].

Number McCI-737-06 on January 22, 2007, and an Order of Dismissal was filed on February 7, 2007.[19]

In conclusion, the Plaintiff failed to exhaust the grievance procedure prior to the time of filing this action. *See, e.g., Smith v. N.C.D.O.C.*, 2007 WL 1200097 at *2 (W.D.N.C. April 19, 2007), *citing Johnson v. Jones*, 340 F.3d 624 (8th Cir. 2003). Accordingly, it is recommended that this action be dismissed without prejudice.

## RECOMMENDATION

Based upon the foregoing, it is recommended that this action be dismissed without prejudice for failure to comply with the exhaustion requirement of the PLRA. It also is recommended that Defendants' motion for summary judgment [11] and Plaintiff's motion for summary judgment [32] be denied.

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

May 7, 2007

Charleston, South Carolina

---

[19] *See* Coleman Affidavit, para. 5 *and* Order of Dismissal filed by the Administrative Law Court on February 7, 2007 *in Cabbagestalk v. SCDC,* No. 06-ALJ-04-1076-AP, which was made a part of this court's file at the hearing on March 19, 2007.

## **<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>**
## **<u>& The Serious Consequences of a Failure to Do So</u>**
### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).